# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARPENTERS HEALTH & WELFARE FUND, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> THE COCA-COLA CO., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Misc. No. 1:06-mc-00508-JDB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## K. CHRIS TODD'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENT PRODUCTION

K. Chris Todd respectfully submits this opposition to Plaintiffs Carpenters Health and Welfare Fund of Philadelphia and Vicinity and Local 144 Nursing Home Pension Fund's Motion to Compel Document Production from K. Chris Todd (Nov. 13, 2006) ("Mot. Compel"), and requests that the Court hear oral argument on this matter.

Plaintiffs' motion seeks to compel Mr. Todd to produce documents that Plaintiffs claim were provided to him by a non-party client in order to obtain his legal advice and counsel. Plaintiffs' motion should be denied for two reasons. First, Mr. Todd may not produce documents in response to Plaintiffs' subpoena because he has reason to believe that responsive documents could not lawfully be obtained from Ms. Minick-Scokalo. Second, Mr. Todd's production of documents in response to Plaintiffs' subpoena would violate the attorney-client privilege.

## COUNTER-STATEMENT OF FACTS

On June 2, 2003, Plaintiffs filed a complaint in the United States District Court for the Northern District of Georgia, alleging various accounting irregularities and misrepresentations on the part of The Coca-Cola Company ("Coke") and several of its officers.

In 2004, Mr. Todd, a partner at the firm of Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., was retained by Tamara Minick-Scokalo, a former Coke employee, and provided her with legal counsel and advice that related in part to her employment with Coke. Ms. Minick-Scokalo resides in Switzerland, but she is a citizen of the United States, and is therefore subject to the subpoena power of the United States courts. *See* 28 U.S.C. §§ 1783-1784. Plaintiffs allege that during the course of Mr. Todd's representation of Ms. Minick-Scokalo, she gave him copies of certain documents she created between 1998 and 2000, which, according to Plaintiffs, describe illegal activity on the part of Coke and its employees that Ms. Minick-Scokalo became aware of during her employment at Coke.

On September 15, 2006, more than three years after filing their complaint, Plaintiffs filed a motion in the United States District Court for the Northern District of Georgia to begin the process of seeking discovery from Ms. Minick-Scokalo under the Hague Convention. Rather than see this process through, however, Plaintiffs waited less than three weeks, and served a subpoena duces tecum on Mr. Todd, Ms. Minick-Scokalo's attorney, on October 5, 2006. Plaintiffs demanded that Mr. Todd produce any documents Ms. Minick-Scokalo may have given him in the course of seeking his advice that he deemed to constitute either: (1) transcripts of Ms. Minick-Scokalo's testimony concerning Coke before any government entity; or (2) "[a]ll reports or presentations or other documents generated or received by [Tamara] Minick-Scokalo during

her employment at Coke." *See* Decl. of Ted Minehan in Supp. of Mot. Compel (Nov. 13, 2006) ("Minehan Decl.), Ex. C at 5.

In response to this subpoena, Mr. Todd informed Plaintiffs that it was inappropriate and premature to seek documents directly from him in his capacity as Ms. Minick-Scokalo's attorney, without first making a meaningful effort to obtain the documents directly from Ms. Minick-Scokalo. *See* Minehan Decl., Ex. D. He stated that he did not possess any documents responsive to Plaintiffs' Request No. 1, and explained that he could not provide any substantive response to Request No. 2 without revealing confidential information in violation of the attorney-client privilege, because any such response would require that he "rely on and reveal privileged and confidential information about the existence, genesis, purpose, content, and import of [the requested] documents," and possibly also reveal to Plaintiffs the subject-matter of the advice sought by Ms. Minick-Scokalo. *See id.*[1] Mr. Todd also made clear that he could not even confirm that responsive documents were in his possession without communicating to Plaintiffs the privileged fact that Ms. Minick-Scokalo gave him those documents in order to seek his legal advice. *See Tri-State Hosp. Supply Corp. v. United States*, No. Civ. A. 00-1463, 2005 WL 3447890, at *4 (D.D.C. Dec. 16, 2005) ("[T]he fact of the transmittal [of subpoenaed documents from client to attorney] might be attorney-client privileged.").

On October 25, 2006, Mr. Todd and Plaintiffs' counsel conferred by telephone. Mr. Todd reiterated his objections to the subpoena, but did not, contrary to Plaintiffs' assertion, suggest that producing responsive documents, if they existed, would violate his own Fifth Amendment right against self-incrimination. The next day, Plaintiffs wrote to Mr. Todd, setting

---

[1] Mr. Todd was able to respond to Request No. 1 without communicating any confidential information, because the documents requested in Request No. 1 are documents to which, if they had ever existed, Ms. Minick-Scokalo would have had no access.

forth their argument that any subpoenaed documents provided to Mr. Todd by his client were not covered by the attorney-client privilege. *See* Minehan Decl., Ex. E.

On November 1, 2006, Mr. Todd responded to Plaintiffs' October 26 letter, explaining that, as is made clear by the cases cited in that letter, any documents provided by Ms. Minick-Scokalo to Mr. Todd must be deemed privileged unless Plaintiffs can establish that those documents could be obtained via subpoena from Ms. Minick-Scokalo if they were in her possession. *See* Minehan Decl., Exh. F. Mr. Todd noted that Ms. Minick-Scokalo would have a Fifth Amendment right to refuse to produce the requested documents if they existed and if she were subpoenaed by Plaintiffs, because the United States Attorney's Office in Atlanta had opened an investigation into whether Coke engaged in practices similar to those alleged in Plaintiffs' complaint during the time Ms. Minick-Scokalo was employed by the company. *See id.* Mr. Todd explained that absent any evidence from Plaintiffs that the documents would not be privileged in Ms. Minick-Scokalo's hands – an issue that remains undetermined precisely because Plaintiffs have not subpoenaed Ms. Minick-Scokalo – he must assume that any such documents are privileged in his hands, and that he could not permissibly turn them over to Plaintiffs. *See id.*

On November 2, 2006, Plaintiffs and Mr. Todd conferred again by telephone. Plaintiffs informed Mr. Todd that they intended to file a motion to compel, and Mr. Todd stated that he would oppose that motion.

## ARGUMENT

Plaintiffs' motion should be denied for two reasons. First, Mr. Todd may not produce documents in response to Plaintiffs' subpoena because he has reason to believe that responsive documents could not lawfully be obtained from Ms. Minick-Scokalo. Second, Mr. Todd's

production of documents in response to Plaintiffs' subpoena would violate the attorney-client

privilege.

## I.    THE DOCUMENTS REQUESTED BY PLAINTIFFS MAY NOT BE OBTAINED FROM MR. TODD BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THEY COULD BE LAWFULLY OBTAINED FROM MS. MINICK-SCOKALO

Documents provided to an attorney by a client may be obtained from the attorney only if

those documents could be obtained directly from the client. *See Fisher v. United States*, 425

U.S. 391, 403-04 (1976) ("[P]re-existing documents *which could have been obtained by court

process from the client* when he was in possession may also be obtained from the attorney by

similar process following transfer by client in order to obtain more informed legal advice.")

(emphasis added).[2]    As Mr. Todd has informed Plaintiffs, he believes that if Plaintiffs were to

subpoena Ms. Minick-Scokalo, she would have a Fifth Amendment right to refuse to produce

responsive documents in her possession.  If documents responsive to Plaintiffs' subpoena could

not lawfully be obtained from Ms. Minick-Scokalo, they may not be so obtained from Mr. Todd.

*See id.* at 404 ("[W]hen the client himself would be privileged from production of the document,

either as a party at common law . . . *or as exempt from self-incrimination*, the attorney having

possession of the document is not bound to produce.") (emphasis added).

As Plaintiffs acknowledge, the United States Attorney's Office in Atlanta opened an

investigation in 2004 concerning the very allegations that are made in Plaintiffs' complaint about

Coke's business practices.  *See* Chad Terhune, *U.S. Probes Coca-Cola's Deal with Takasago on

Shipments*, Wall St. J., Mar. 1, 2004, at B5 (attached hereto as Ex. A).  Although Ms. Minick-

Scokalo did not engage in any impropriety herself, the fact that she is alleged to have been a

---

[2] *Cf. Banks v. Office of the Senate Sergeant-at-Arms & Doorkeeper*, 236 F.R.D. 16, 21 (D.D.C. 2006) ("[F]orwarded documents are only privileged if they would have been privileged in the hands of the [client].").

witness to illegal activity, and to have written a document for her employer touching on that activity, is sufficient basis for her to assert her rights under the Fifth Amendment. *See Ohio v. Reiner*, 532 U.S. 17, 21 (2001) ("[W]e have never held . . . that the privilege is unavailable to those who claim innocence. To the contrary, we have emphasized that one of the Fifth Amendment's basic functions . . . is to protect *innocent* men . . . who otherwise might be ensnared by ambiguous circumstances.") (internal quotation marks and citation omitted).

Although the Fifth Amendment does not protect the contents of pre-existing, voluntarily prepared documents, the *act* of producing responsive documents has communicative and testimonial aspects that could subject to Ms. Minick-Scokalo to criminal investigation and prosecution. *See United States v. Hubbell*, 167 F.3d 552, 567-68, (D.C. Cir. 1999) ("*Hubble I*"), *aff'd*, 530 U.S. 27 (2000) ("*Hubble II*"); *see also Hubbell II*, 530 U.S. at 37 ("We have held that 'the act of production' itself may implicitly communicate 'statements of fact.'"); *Fisher*, 425 U.S. at 410 ("The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced."); *Parker v. Baltimore & Ohio R.R.*, 555 F. Supp. 1177, 1179 (D.D.C. 1983) ("[T]he act of producing a record can be 'testimonial'") (quoting *Fisher*, 425 U.S. at 410-14). Specifically, "the act of production communicates at least four different statements. It testifies to the fact that: i) documents responsive to a given subpoena exist; ii) they are in the possession or control of the subpoenaed party; iii) the documents provided in response to the subpoena are authentic; and iv) the responding party believes that the documents produced are those described in the subpoena." *Hubbell I*, 167 F.3d at 567-58.

By producing documents in response to Plaintiffs' subpoena, Ms. Minick-Scokalo would necessarily be testifying to the authenticity of those documents, and to the fact that she created

those documents while she was employed at Coke. *See id.* That testimony could be evidence in any criminal investigation, because the documents in question are alleged to contain Ms. Minick-Scokalo's personal impressions and opinions about potentially wrongful business practices, which could not be obtained or authenticated other than by the testimony of Ms. Minick-Scokalo herself. For that reason, Mr. Todd believes that Ms. Minick-Scokalo would have a Fifth Amendment right to decline to produce the documents if she were subpoenaed, and to the extent that she could decline to produce the documents sought by Plaintiffs, her attorney must decline to do so also. *See Fisher*, 425 U.S. at 404.

Plaintiffs argue that Ms. Minick-Scokalo's production of the requested documents would not be testimonial because it would not communicate to Plaintiffs anything they do not already know. They claim that Ms. Minick-Scokalo "voluntarily revealed the documents' existence and content" to their "investigator," and that "Mr. Todd's production of the requested documents now does not communicate anything about their existence." *See* Mot. Compel at 8-9 (citing *United States v. Ponds*, 454 F.3d 313, 323 (D.C. Cir. 2006), for the proposition that an act of production implicates the Fifth Amendment only when the act of production "add[s] anything significant 'to the sum total of the Government's information'"). This is not correct.

First, although Plaintiffs make three separate references to Ms. Minick-Scokalo's conversation with their "investigator," suggesting not only that those conversations lead to the "unavoidable conclusion [that the documents] do not incriminate Ms. Minick-Scokalo," but also that the attorney-client privilege has been waived, *see* Mot. Compel at 6 n.3, 8, 9, Plaintiffs do not provide any details about the circumstances and substance of Ms. Minick-Scokalo's purported statements; nor do they support these allegations with a sworn statement. Thus, no factual basis exists for Plaintiffs' assertions.

Second, the *Hubbell I* court made clear that the act of producing documents is testimonial unless the existence and location of the documents is a "'foregone conclusion,'" which requires that the party seeking the documents already knows that the documents exist and that they are responsive to the subpoena, and is able to independently authenticate the documents without relying on the fact that they were produced in response to the subpoena. 167 F.3d at 568 (quoting *Fisher*, 425 U.S. at 411). This knowledge on the part of the party seeking documents must be particularized; the *Hubbell I* court specifically rejected the argument that the existence of documents was a foregone conclusion merely because business people routinely keep that type of record. *See id.* at 570. And this knowledge must be certain. In *Fisher*, for example, in which the court stated that the production of accounting records prepared by the subpoena-recipient's accountant would "add[] little or nothing to the sum total of the Government's information," the production of those documents would truly have added *nothing* to the government's knowledge, because the recipient of the subpoena had stipulated to both the existence of the documents and the fact that they were those described in the subpoena. *See* 425 U.S. at 11; *Hubbell I*, 167 F.3d at 570. In this case, however, Plaintiffs lack the concrete, specific, and independently verifiable information about the requested documents that would be required to render Ms. Minick-Scokalo's production of those documents non-testimonial for Fifth Amendment purposes.

Plaintiffs also argue that Ms. Minick-Scokalo has not provided sufficient evidence that she has reason to fear self-incrimination, and that such a claim is "imaginary and unsubstantial." *See* Mot. Compel at 9-11 (citing *United States v. Marra*, No. Civ. A. 05-2509, 2005 WL 2474873 (D.N.J. Oct. 5, 2005); *Bear Stearns & Co. v. Wyler*, 182 F. Supp. 2d 679 (N.D. Ill. 2002)). They also purport to offer evidence of their own that she has nothing to fear from

producing the documents, by attaching a 2005 Coke press release about its settlement with the

Securities and Exchange Commission ("SEC"). The press release states in passing that "the

Company was also informed that the Department of Justice has decided to close its

investigation." *See* Minehan Decl., Ex. H. This argument lacks merit.

First, this press release does not have the significance apparently attributed to it by

Plaintiffs. It does not state that all investigations into the actions of individual Coke employees

have also been closed. It does not say that the Department of Justice ("DOJ") has not re-opened,

and never will re-open its investigation, perhaps on the basis of information gleaned from the

discovery in civil lawsuits. It does not say whether this information came from the DOJ, or from

the SEC, or from some other third party. And, most importantly, this document is not an official

government document, but merely a press release issued by a private corporation. Ms. Minick-

Scokalo could not rely on this document to prevent any future investigation or prosecution by the

DOJ if she did produce responsive documents that triggered either eventuality, and Plaintiffs

likewise may not rely on it to demonstrate that Ms. Minick-Scokalo would have nothing to fear

by producing the requested documents.

Second, neither of the cases cited by Plaintiffs involved factual situations similar to that

of Ms. Minick-Scokalo. Unlike this case, in which the record is silent as to the scope of the U.S.

Attorney's investigation, the *Marra* court was able to determine that "there is no Justice

Department referral in place [and] Marra is not under investigation," and it was also clear that

the target of the investigation was limited to a named individual other than the subpoena-

recipient, with no suggestion that the investigation might extend to encompass him. *See* 2005

WL 2474873, at *1, *7-*8. The facts in the instant case are very different. A criminal

investigation has been in place and may still be ongoing. *See* Ex. A. As noted above, the press

release issued by Coke about the DOJ's investigation if its conduct is not evidence of the status of that investigation with regard to others.

In *Wyler*, the court held that the subpoena-recipient's Fifth Amendment claim failed because, as a non-resident alien, he had failed to demonstrate that he had any right to invoke the privilege against self-incrimination. *See* 182 F. Supp. 2d at 680-81. In this case, there is no doubt that Ms. Minick-Scokalo, a United States citizen living abroad, is entitled to assert her Fifth Amendment right against self-incrimination. *See Reid v. Covert*, 354 U.S. 1, 5-6 (1957) (holding that the Bill of Rights protects United States citizens abroad). What is more, the *Wyler* Court went on to note that Mr. Wyler had failed to allege *any* pending criminal investigation relating *in any way* to himself or the subject of the documents at issue, and had in fact "made no attempt to tender a reason why the production of the documents at issue would be incriminating." 182 F. Supp. 2d at 684. In this case, the United States Attorney's office has begun an investigation against Coke that is related to the content of the requested documents, and, as explained above, Ms. Minick-Scokalo's production of those documents would "testify" that those documents are authentic and were created by her during her employment at Coke.

Third, Plaintiffs misunderstand the import of *Fisher* and *Banks*, which they cite in support of their motion. While both of these cases do make clear that a document does not become privileged or otherwise protected merely because it is transferred to an attorney, they also make clear that a document may only be obtained by subpoena from an attorney if it could have been so-obtained from the client. *See Fisher*, 425 U.S. at 403-04; *Banks*, 236 F.R.D. at 21. Accordingly, Mr. Todd and this Court must presume those documents to be privileged *unless and until* Plaintiffs can establish that the documents could have been obtained from Ms. Minick-Scokalo if they were in her possession and she had been subpoenaed instead of her lawyer.

Plaintiffs have failed to establish that Ms. Minick-Scokalo could be compelled to produce the documents they seek, and Mr. Todd therefore may not respond to Plaintiffs' Request No. 2.

Finally, any uncertainty that exists as to whether Ms. Minick-Scokalo would have a valid Fifth Amendment basis for declining to produce the documents if she were subpoenaed must be held against Plaintiffs, for the simple reason that that uncertainty would not exist if Plaintiffs had subpoenaed Ms. Minick-Scokalo directly. Although Plaintiffs claim to have made "repeated" efforts to obtain the documents they request, the only example of those efforts cited by Plaintiffs is a motion, filed on September 15, 2006, asking the United States District Court for the Northern District of Georgia to begin the process of subpoenaing Ms. Minick-Scokalo under the terms of the Hague Convention. Plaintiffs complain that this process is "useless," because it "may take many months, if not a year, to accomplish," but they offer no explanation for why they waited more than three years after filing their complaint to begin proceedings under the Convention to obtain documents allegedly created more than six years ago. Plaintiffs do not appear to have requested that Ms. Minick-Scokalo waive service of a subpoena, which would permit her to be subpoenaed directly by the district court, and which would demonstrate that Plaintiffs at least attempted to expedite the process of seeking documents from Ms. Minick-Scokalo. *See* 28 U.S.C. § 1783; Fed. R. Civ. P. 4(f). Indeed, Plaintiffs do not appear to have taken any steps to obtain documents from Ms. Minick-Scokalo after filing their motion, and this inactivity, combined with the fact that Plaintiffs waited less than three weeks after commencing proceedings under the Hague Convention before subpoenaing Mr. Todd, strongly suggests that they had no intention of going through the Convention to get documents.

This Court should not give Plaintiffs the benefit of the doubt in assuming that documents could have been subpoenaed from Ms. Minick-Scokalo merely because they chose to seek the

documents directly from her attorney. The truth of the matter is that Mr. Todd has good reason

to believe that Ms. Minick-Scokalo would have the right to refuse to produce these documents if

they were in her possession; Plaintiffs have failed through their own tardiness to establish

otherwise; and this Court should deny Plaintiffs' motion to compel.

## II.     THE ACT OF PRODUCING THE REQUESTED DOCUMENTS WOULD VIOLATE THE ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege is "one of the pillars that supports the edifice" of our system

of justice. *Kelly v. Ford Motor Co.*, 110 F.3d 954, 961 (3d Cir. 1997); *see also McClary v.*

*Walsh*, 202 F.R.D. 286, 294 (N.D. Ala. 2000) (the attorney-client privilege is "a cornerstone of

Anglo-American law"). The purpose of the privilege "is to encourage full and frank

communication between attorneys and their clients and thereby promote broader public interests

in the observance of the law and administration of justice." *Upjohn Co. v. United States*, 449

U.S. 383, 389 (1981).

This "full and frank communication" fosters loyalty and trust between an attorney and a

client. *Kelly*, 110 F.3d at 961. It enables clients to speak freely to their attorneys and, just as

important, provide their attorneys with documents about which they seek legal advice, secure in

the knowledge that their confidential communications will remain confidential. *See Fisher*, 425

U.S. at 404 (noting that if documents could be subpoenaed merely because they had been given

to an attorney, "the client will then be reluctant to transfer possession to the lawyer"); *see also*

*Upjohn*, 449 U.S. at 389 (noting that lawyers will be best able to advocate and offer advice if

they are "fully informed by the client.").

Plaintiffs' motion to compel should be denied because it conflicts with the attorney-client

privilege in two fundamental ways. First, by attempting to obtain documents directly from Mr.

Todd, in his capacity as Ms. Minick-Scokalo's attorney, without first making any meaningful

effort to obtain those documents from Ms. Minick-Scokalo herself, Plaintiffs seek to deny Ms. Minick-Scokalo the opportunity to object to and litigate a subpoena properly addressed to her, and to penalize her for providing documents to her attorney in the course of seeking legal advice. Second, Mr. Todd's production of documents in response to Plaintiffs' subpoena would violate the attorney-client privilege because his act of production would reveal confidential information provided by his client in order to obtain legal advice and representation.

A.     **Plaintiffs' Motion Should Be Denied Because It Is Premature**

Plaintiffs' motion should be denied because Plaintiffs have made no meaningful effort to obtain documents directly from Ms. Minick-Scokalo, and this Court should not sanction Plaintiffs' attempt to circumvent the attorney-client privilege in the name of convenience and expediency. As explained above, Plaintiffs' purported efforts to subpoena Ms. Minick-Scokalo were belated and half-hearted, and their haste in subpoenaing Mr. Todd less than three weeks after beginning the Hague Convention process strongly suggests that Plaintiffs never seriously intended to try to obtain documents through that process.

None of the cases cited by Plaintiffs in support of their motion enforced or otherwise sanctioned an attempt to subpoena an attorney in the first instance, before a meaningful effort was made to obtain documents from the client or other person in control of the documents. In *Fisher*, the documents sought did not belong to the client of the subpoenaed attorney, but belonged to the client's accountant, whom the government properly subpoenaed. *See United States v. Fisher*, 352 F. Supp. 731, 734 (E.D. Pa. 1972), *aff'd*, 500 F.2d 683 (3d Cir. 1974), *aff'd*, 425 U.S. 391 (1976). Only after it learned that the client had borrowed the documents from the accountant and given them to his attorney to – as the district court concluded – "thwart the government's investigation," did the government subpoena the attorney. *See id.* And in *Banks*

and *Tri-State Hospital*, the parties seeking documents did not subpoena an attorney at all.  In each case, the defendant was subpoenaed, and resisted production on the ground that documents has been provided to attorneys and thereby constituted attorney-client communications.  *See Banks*, 236 F.R.D. at 18-19; *Tri-State Hosp.*, 2005 WL 3447890, at *1-*2.  What is more, in both of these cases the court held that many of the requested documents were indeed privileged because they had been provided to an attorney.  *See Banks*, 236 F.R.D. at 20; *Tri-State Hosp.*, 2005 WL 3447890, at *3.

It is unsurprising that Plaintiffs have failed to cite such a case, because enforcing a subpoena issued in the first instance to an attorney would permit parties such as Plaintiffs, who wish to circumvent the Hague Convention or any other inconvenient discovery procedure, to thwart one of the fundamental purposes of the attorney-client privilege, which is that clients are able to speak freely to their attorneys and, just as important, provide their attorneys with documents about which they seek legal advice, secure in the knowledge that their confidential communications will remain confidential.  *See Fisher*, 425 U.S. at 404 (noting that if documents could be subpoenaed merely because they had been given to an attorney, "the client will then be reluctant to transfer possession to the lawyer").  Plaintiffs seek to deny Ms. Minick-Skokalo the opportunity to object to and litigate a subpoena properly addressed to her, and thereby make it harder for her to prevent the production of the requested documents than if she had been subpoenaed instead of her attorney.  As such, Plaintiffs' motion would, if granted, penalize Ms. Minick-Skokalo for seeking the advice of counsel, which is precisely what the attorney-client privilege serves to prevent, and this Court should deny that motion as premature.

**B.    Mr. Todd's Production of Responsive Documents Would Reveal Confidential Attorney-Client Communications**

As explained above, the act of producing documents in response to a subpoena has communicative and testimonial aspects that communicate to the recipient of those documents that documents responsive to a given subpoena exist; that they are in the possession or control of the subpoenaed party; that the documents provided in response to the subpoena are authentic; and that the responding party believes that the documents produced are those described in the subpoena. *Hubbell I*, 167 F.3d at 567-58.

By producing documents to Plaintiffs, Mr. Todd would be testifying in each of these four ways. In order to respond to Plaintiffs' Request No. 2, Mr. Todd would have to determine on the basis of confidential information provided to him by Ms. Minick-Scokalo whether he possessed any "reports or presentations or other documents generated or received by [Tamara] Minick-Scokalo during her employment at Coke." By producing any such documents, Mr. Todd would, in effect, be testifying that those documents were prepared by Ms. Minick-Scokalo during her employment at Coke, that they are authentic, and that Ms. Minick-Scokalo gave him the documents. *See id.* That testimony would reveal to Plaintiffs the fact that he had received all of this information from Ms. Minick-Scokalo, and would therefore disclose confidential attorney-client communications. Moreover, by producing documents responsive to Plaintiffs' request, Mr. Todd would also risk revealing the subject-matter of the legal advice sought by Ms. Minick-Scokalo, which could be inferred by Plaintiffs from the subject-matter of any documents produced. For these reasons, Mr. Todd cannot make any substantive response to Request No. 2 without violating the attorney-client privilege.

In light of Plaintiffs' apparent confusion about the basis for Mr. Todd's assertion of the attorney-client privilege on behalf of Ms. Minick-Scokalo, it is important that he make clear

what he is *not* claiming with regard to the act of producing responsive documents.  He is not claiming that the underlying facts contained in any documents given to him are privileged.  He is not claiming that any documents became privileged merely because they were given to him.  And he is not claiming that producing responsive documents would implicate his Fifth Amendment rights.  What he *is* claiming, quite correctly, is simply that he may not produce documents responsive to Plaintiffs' subpoena because the *act of producing those documents* would reveal confidential information received from Ms. Minick-Scokalo about the nature, genesis, and authenticity of those documents.  Thus, while the fact that Ms. Minick-Scokalo prepared a particular document would not be privileged, and would not become privileged merely because Ms. Minick-Scokalo conveyed it to Mr. Todd, what *would be* privileged is the fact that Ms. Minick-Scokalo told Mr. Todd that she prepared a particular document.  It is this latter fact, along with other related and similarly privileged facts revealed to Mr. Todd by his client, that would be communicated to Plaintiffs if Mr. Todd produced documents in response to Request No. 2.

        In an attempt to side-step the restrictions imposed on Mr. Todd by the attorney-client privilege, Plaintiffs suggest that their attempt to subpoena him directly is warranted by the demands of their civil litigation, and the inconvenience of obtaining documents through the proper channels.  Thus, Plaintiffs complain about the inconvenience of the Hague Convention process, assert that they "understand that Ms. Minick-Scokalo no longer has custody of the relevant documents," and vaguely intimate that they have subpoenaed Mr. Todd only as a last resort.  *See* Mot. Compel at 2.  None of these claims can justify their attempted circumvention of the attorney-client-privilege.

First, even if it is true that Ms. Minick-Scokalo gave copies of the documents to Mr. Todd, they would still be in her custody because Mr. Todd would be obliged to return the documents to her if she so requested. The fact that Mr. Todd might have copies of the documents cannot justify Plaintiffs' failure to subpoena Ms. Minick-Scokalo before attempting to obtain documents from her attorney. Second, even if Plaintiffs' failure to subpoena Ms. Minick-Scokalo were entirely justified, and subpoenaing Mr. Todd were the only way for Plaintiffs to obtain the requested documents in time to use them in their case against Coke, this Court should deny their motion to compel because the attorney-client privilege, unlike the protection granted attorney-work product, is absolute, and may not be defeated even by a showing of need and the inability to secure the equivalent of the protected materials elsewhere. *See McPeek v. Ashcroft*, 202 F.R.D. 332, 338 (D.D.C. 2001) ("The attorney-client privilege is absolute, but the work product privilege . . . is defeated by a showing of substantial need and an inability to secure the substantial equivalent of the protected materials by other means."). The exigencies of Plaintiffs' lawsuit cannot outweigh or supersede Ms. Minick-Scokalo's right to communicate with her attorney in confidence.

Because Mr. Todd's production of documents responsive to Plaintiffs' Request No. 2 would reveal confidential attorney-client communications, Mr. Todd may not respond to that request, and this Court should deny Plaintiffs' motion to compel him to do so.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs Carpenters Health and Welfare Fund of Philadelphia and Vicinity and Local 144 Nursing Home Pension Fund's Motion to Compel Document Production from K. Chris Todd.

Respectfully submitted,

Geoffrey M. Klineberg
  D.C. Bar No. 444503
James Webster
  D.C. Bar No. 450516
Steven F. Benz
  D.C. Bar No. 428026
Andrew M. Hetherington
  D.C. Bar No. 490434
KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
gklineberg@khhte.com
ahetherington@khhte.com

*Counsel for K. Chris Todd*

December 1, 2006

# CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2006, the foregoing K. Chris Todd's Opposition to Plaintiffs' Motion to Compel Document Production and Proposed Order were mailed postage pre-paid by U.S. Mail to:

***Counsel for Plaintiffs***

Roger Adelman
LAW OFFICES OF ROGER ADELMAN
1100 Connecticut Ave., N.W., Suite 730
Washington, DC 20036

Nancy M. Juda
LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
1100 Connecticut Ave., N.W., Suite 730
Washington, DC 20036

Steven W. Pepich
William S. Lerach
Daniel S Drosman
James A. Caputo
Scott H. Saham
Ted Minehan
Gavin M. Bowie
LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Dennis J. Herman
LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

Sandra Stein
LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
1845 Walnut St., 23rd Floor
Philadelphia, PA 19103

Martin D. Chitwood
Stuart J. Guber
James M. Evangelista
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309

Michael J. VanOverbeke
Thomas C. Michuad
Michael E. Moco
VANOVERBEKE MICHAUD
    & TIMMONY, P.C.
79 Alfred Street
Detroit, MI 48201

Daniel M. Shanley
DECARLO & CONNOR
533 South Fremont Avenue, 9th Floor
Los Angeles, CA 90071-1706

***Counsel for Defendants***

Robert Thornton
Jeffrey Cashdan
Stephen Devereaux
KING AND SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309

Ronald L. Olson
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560

Andrew M. Hetherington
    D.C. Bar No. 490434
KELLOGG, HUBER, HANSEN,
    TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (facsimile)
ahetherington@khhte.com

December 1, 2006

# Exhibit A

# U.S. Probes Coca-Cola's Deal With Takasago on Shipments

### By CHAD TERHUNE

Federal investigators in the U.S. are examining Coca-Cola Co.'s dealings with a Japanese company in connection with allegations the Atlanta beverage company overstated financial results for several years by shipping excessive beverage concentrate to Japan, according to people familiar with the investigation.

Officials from the U.S. Attorney's Office and the U.S. Securities and Exchange Commission in Atlanta are looking at whether Coca-Cola engaged in "channel stuffing" with Japan's Takasago International Corp., a global supplier of flavors and fragrances, people close to the matter said. Channel stuffing—the overselling of product to customers in order to pad short-term results and misrepresent true demand—is considered improper.

Takasago, which sells beverage ingredients to Coca-Cola and others, also serves an important logistics role for Coca-Cola in Japan by handling the importation of large quantities of beverage concentrate shipped from Coca-Cola's manufacturing plants in Ireland. This is the relationship that has drawn scrutiny from the U.S. government.

Former Coca-Cola officials have told investigators that Coca-Cola shipped excessive concentrate from Ireland to Takasago warehouses in order to meet or exceed quarterly sales and profit goals in the 1990s, according to people familiar with the investigation. These former executives said Coca-Cola inflated Takasago's inventory, normally in the range of 90 days, but at times to levels as high as 100 to 200 days, these people said.

Takasago disperses the concentrate, the main ingredient in soft drinks, to Coca-Cola bottlers as needed for production of the finished drinks. These people said the alleged arrangement with Takasago gave Coca-Cola another outlet for channel stuffing without having to burden its bottlers in Japan with excess shipments.

The Wall Street Journal, citing people familiar with the matter, reported in January that former Coca-Cola officials have told investigators that they witnessed the company shipping excessive concentrate directly to bottlers in Japan.

The U.S. government's interest in Japan has focused attention on Douglas Daft, Coca-Cola's chairman and chief executive, who worked closely on the Japan business in the late 1980s and 1990s prior to taking his current post in February 2000. Government investigators have questioned current and former Coca-Cola employees specifically about Mr. Daft, according to people familiar with the situation.

Mr. Daft, through a company spokesman, declined to comment. Spokesman stuffing "lack merit." Coca-Cola said it is cooperating fully with investigators.

On Feb. 19, Mr. Daft said he plans to retire year end. The company's board is considering Steven J. Heyer, Coke's No. 2 executive, and other outside candidates for the top job. James B. Williams, a Coke director and spokesman for the board, said the government investigation didn't play a role in Mr. Daft's decision to retire after five years at the helm, which was his original timetable.

Norio Suzuki, a Takasago official in Tokyo, said his company hasn't been contacted by U.S. investigators. "We are not in a position to comment on the government investigation involving our customer," Mr. Suzuki said in an e-mail. Takasago, with $838.9 million in sales for the year ended March 31, 2003, has worked with Coca-Cola since the late 1980s.

The U.S. Attorney's office and the SEC declined to comment.

According to people close to the company, board members have expressed frustration with the continuing investigation and the distraction it has become. But Coca-Cola lawyers have assured directors that the allegations of channel stuffing are unfounded, these people said.

There can be legitimate reasons for building up inventory. Delays in shipping or clearing customs can cause Coca-Cola to boost inventory levels of basic ingredients to avoid the risk of running out, particularly for fast-selling drinks.

Coke has consolidated a considerable amount of its concentrate production in countries with lower corporate taxes, such as Ireland. Coke's two plants in Ireland produce most of the concentrate for Georgia coffee, a popular line of drinks in Japan. Coke officials reviewed their sales practices in Japan shortly after the SEC issued a bulletin in December 1999 warning companies about channel stuffing and other improper methods of revenue recognition, according to people familiar with the matter.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CARPENTERS HEALTH & WELFARE FUND, ET AL., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Misc. No. 1:06-mc-00508-JDB |
| THE COCA-COLA CO., et al., | ) ) ) | |
| Defendants. | ) ) ) ) | |

## [PROPOSED] ORDER

This cause came before the Court on Plaintiffs Carpenters Health and Welfare Fund of Philadelphia and Vicinity and Local 144 Nursing Home Pension Fund's Motion to Compel Document Production from K. Chris Todd. After reviewing the pleadings, and otherwise being advised in the premises, it is hereby ORDERED that the aforesaid motion is DENIED.

SO ORDERED, this _____ day of _____, 2006.

_____
Hon. John D. Bates
United States District Court Judge